Brockenbroüght, J.
The statute says, that no gift of any slave shall be good unless the same be made by will, or deed duly proved and recorded ; but this provision “ shall be construed to extend only to gifts of slaves, whereof the donors have, notwithstanding such gifts, remained in the possession, and not to gifts of such slaves as have at any time come into the actual possession of, and have remained with, the donee, or some person claiming under such donee.” In this case, after the plaintiff' intermarried with the daughter of the defendant, the latter twice declared that he had given the slave in question to his daughter; an¿, about the same lime, said to his daughter,‘^íopSiíGepmfcour negro girl home when you please.”C i^oruy afmrv^^s, the daughter did go to her father’sJaous& aod-dirLb®ng away the girl and carried her anernregin did remain in the possession of the till the wife’s death, which happena&about a yeax^gter the possession was so taken, if theEm^fcs^rovcd had stopped at this point, no one would question that the gift was valid. But it was proved, that when the daughter went for the girl, her father was absent from home, and her mother said to her, that “ she did not give her the negro girl, but lent her to her.” And it is argued, that her acceptance of the slave must be taken to be an acceptance on the terms expressed by the mother. But the jury have decided otherwise, and, I think, correctly. She obtained the possession in conformity with the directions of him who had the right to give, and the qualification annexed to that possession by one who was not the owner, ought not to impair the validity of the act of the donor. The right acquired by the husband of the donee, by the gift and actual possession, could not be taken away by the subsequent application of his *124 wife to her father to give her a bill of sale, or deed for the girl: that application can only shew, at the most, that she thought a deed necessary to perfect the title, of her husband; in which she was mistaken. Nor can the subsequent refusal of the father to make the deed, invalidate his former act. I think the judgment should be affirmed.
Care, J.
I am, in general, opposed to these claims to slaves, founded on a parol gift between parent and child; and it probably proceeded from this, that, on the argument, my impression was in favour of the appellant. A closer examination, however, has changed it. The parties went to trial on the general issue; and the jury found a verdict for the plaintiff, thereby establishing the gift, and that possession followed it. The court refused a new trial, and on exception taken, spread the facts upon the record. We are to judge from these facts whether the court erred. This court said in Ross v. Overton, 3 Call 319. that “a court applied to to grant a new trial because the verdict is contrary to evidence, ought to grant it only in case of a plain deviation, and not in a doubtful one, merely because the court, if on the jury, would have given a’ different verdict; since that would be to assume the province of the jury, whom the law has appointed the triers.” Here, we have both the jury who tried the issue, and the court which heard the evidence, and saw the manner of the witnesses, and could weigh their honesty and intelligence—we have both these, in favour of the verdict. The deviation ought to be plain and strong, to authorize this appellate tribunal to say, that the verdict was contrary to evidence. How are the facts ? It is in clear proof, that on two occasions the father said he had given the slave to his daughter; that, on a third, he said to her, “ Go and fetch your negro girl home, when you please;” that shortly after, she did go and carry the girl home; and *125 that the slave remained in the possession of her husband till his wife’s death, about a year after. If this evidence stood alone, there could be no ground for doubt: It would shew, clearly, a parol gift followed by such possession as the law contemplates. But there are two circumstances, changing somewhat the aspect of the case. 1. When the donee went for the girl, her father was from home, and her mother told her, “ she did not give her the negro, but lent her to her.” Whether in taking the slave, the donee meant to assent to this qualification, or whether she took her under the unqualified leave of her father, considering that her mother had no power to change it, was a question for the jury; in deciding which, I certainly cannot undertake to say, that they have plainly deviated from the evidence. Indeed, I cannot even say, that if 1 had been upon the jury, I should have found differently: it might have depended on matters, of which as an appellate tribunal it is impossible for me to judge. 2. The other circumstance is, that, about six months after they had the slave in possession, the donee, in her husband’s presence, asked her father to give her a bill of sale or deed for the slave, but he refused, saying that he understood, her husband’s father had refused to make her husband a deed for some land he had expected him to convey to him, and that he would not make the right to the slave until the right to the land was made. The husband took no part in this conversation. Now, as to the effect of this conversation—whether it proved an acknowledgment of the daughter and husband, that they had accepted possession of the slave as a loan, or proceeded from their ignorance that a parol gift followed by possession was valid, or was the offspring of a wish to avoid disputes and to be perfectly secured in a title which without such security they meant to claim; of all this, I am sure that the jury and the court which tried the cause, were better qualified to judge than I *126 am. Therefore, 1 cannot say, that in the conclusion , , . . n they have come to, they have grossly erred; on the contrary, I feel satisfied with it.